**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

HILLARY B. CRANFORD, Individually
and as Administratrix of the
Estate of CARLOS GIOVANNI VIELMAN ESTRADA,

    Plaintiffs,

v.   CIVIL ACTION NO.:
    JUDGE:

AUTOMATION & ELECTRONICS (USA), LIMITED,
a Delaware and North Carolina Corporation,

    Defendant.

**COMPLAINT**

COMES NOW Plaintiff, Hillary B. Cranford ("Ms. Cranford"), individually and as Administratrix of the Estate of Carlos Giovanni Vielman Estrada ("Mr. Estrada"), by counsel Timothy C. Bailey and the law firm of Bailey, Javins, & Carter, LC, state and allege as follows for their Complaint against the Defendant:

**INTRODUCTION**

1. This is a civil tort and product liability action seeking to recover for the wrongful death of Mr. Carlos Giovanni Vielman Estrada ("Mr. Estrada") as a direct and proximate result of the Defendant Automation & Electronics (USA), Limited's ("Defendant A&E) negligence during the worker training process of an automated gangsaw and conveyor belt at Mr. Estrada's employer, Mulch Manufacturing, Inc.'s ("Mulch"), Homerville, Georgia facility. The products liability claim arises from a combination of design and/or manufacturing defects, failure to warn, negligent maintenance, and other tortious acts and omissions by Defendant A&E in the design and/or

manufacturing of the at issue gang saw. Defendant A&E's actions then proximately caused the death of Mr. Estrada.

## PARTIES & JURISDICTION

2. Plaintiff Ms. Cranford is the Administratrix of the Estate of Carlos Estrada, deceased, having been appointed by the Probate Court of Clinch County on October 12, 2023. Mr. Estrada was a Guatemalan citizen in the United States residing in the Homerville, Georgia, area with a valid work visa to work for Mulch. Mr. Estrada was held in high esteem by co-workers and management at Mulch. In filing this action, Administratrix of Mr. Estrada's estate hereby consents to the personal jurisdiction of this Court.

3. Defendant Automation & Electronics (USA), Limited is a foreign North Carolina limited corporation with its registered office and principal office both located at 15 Glenn Bridge Rd., Ste. A., Arden, North Carolina, 28704. Defendant A&E is located at that address and may be served through its registered agent, Joseph Korac at 15 Glenn Bridge Rd., Ste. A., Arden, North Carolina, 28704. Defendant A&E is engaged in the business of providing wood processing and sawmill machinery and automation through the use of cameras, lasers, and 3-D scanners installed on sawmill machinery. It markets itself as an expert in providing sawmills with turnkey automation systems and training to workers to control their wood processing equipment for various products, including gangsaws, and provided these services in this matter.

4. Jurisdiction and venue are hereby proper in this Court pursuant to 28 U.S.C. § 1332 because all parties are diverse and the amount in controversy far exceeds $75,000. The Plaintiff was a resident and citizen of Homerville, Georgia, at all times relevant and consents to the jurisdiction of this Court. Defendant is a citizen of North Carolina. There is therefore complete diversity among the Plaintiff and the Defendant.

2

5.      Venue is proper as the location of the incident, witnesses, and evidence regarding the specific factual occurrences and conduct of Defendant A&E's negligence at the time relevant to this matter occurred in Homerville, Clinch County, Georgia, at Mulch's sawmill facility. Thus, judicial economy is best served by this matter being heard in this venue and these matters heard by the same Court.

### PRODUCT LIABILITY AND NEGLIGENCE FACTS

6.      At all times relevant, Mr. Estrada worked for Mulch Manufacturing as a laborer. Mr. Estrada was employed under a valid United States work visa. Mr. Estrada had moved to the United States in order to make a better living to send money to his wife and children. His wife and children had to remain in Guatemala until they were able to save enough money to also immigrate to the United States.

7.      In wood processing and sawmills, "gang saws" are used to cut a single log or single larger piece of wood, called a "cant," into smaller pieces. The smaller pieces are later finished into processed planks of wood. Gang saws use multiple blades to cut the large, single "cant" of wood into smaller pieces at one time, reducing the need for multiple cutting stages.

8.      Cants are flat on two sides and rounded on the other two sides. The rounded sides are bark that has yet to be cut off. Below is a picture of two cants on the in-feed side of the subject gang saw:



9. Cants first move to the left, down the rails of the gang saw, where they are then fed forward into the blades. The red arrows in the above picture represent the path cants move along.

10. As the cants run through the gang saw, the bark on the sides is trimmed off. This bark is pushed into a shoot on the out-feed side of the gang saw and used for making mulch while the remainder of the now cut wood is used to make proceed finished wood products.

11. A worker, who is instructed to stand beside the out-feed conveyor belt, uses a shovel like tool to push the bark off the conveyor belt and into the shoot. This is the job that Mr. Estrada was assigned at the time he was killed. The shoot and out-feed side of the gang saw is pictured below. The red circle on the left identifies the shoot, and the red circle on the right identifies the approximate location Mr. Estrada was instructed to stand in.



12.     Prior to 2023, cants at Mulch Manufacturing's plant in Homerville, Georgia, were fed into the gang saw manually from the in-feed side.

13.     In late 2022, Mulch contracted with Cooper Machine Company and Defendant A&E to purchase and install a new gang saw. This new gang saw was to be automated, which would remove the need to have someone manually load the cants into the in-feed side. Cooper Machine Company fabricated the metal aspects of the gang saw and Defendant A&E installed the cameras and sensors and oversaw the electrical operating program design and automation aspects of the gang saw (the "automation system"). In addition to the gang saw itself, a booth would be constructed in the sawmill that contained computer screens and controls that could be used to operate the automated gangsaw with a single employee. Defendant A&E was also responsible for the set-up of these controls.

14.     Cooper Machine and Defendant A&E were additionally contracted with by Mulch to perform the commission of the gang saw and operational training to Mulch employees, including

Mr. Estrada. Defendant A&E's marketing materials hold it out as valuing safety training and support as an "essential part of our internal development which also extends to our clients for all on-site operational training."

15. Mulch agreed to close its sawmill in December 2022 to begin the installation, fitting, and automation commissioning of the new gang saw which was overseen and directed by Cooper Machine and Defendant A&E.

16. The months long commissioning process was as follows:

   a. Cooper Machine delivered the hardware and machinery for the gang saw to Mulch.

   b. Mulch employees then assembled the gang saw and conveyor belt under the direction of Cooper Machine.

   c. Upon completion of the assembly of the mechanical parts, Cooper Machine employees inspected the mechanical aspects of the gang saw and conveyor belt.

   d. Finally, employees from Defendant A&E arrived at the sawmill to install and test the sensors, cameras, and 3-D scanners and to set up the computer automation of the entire gang saw to ensure it all worked properly. Defendant A&E then began to train Mulch employees in the operation of the new gang saw.

17. The new gang saw was designed to only handle one cant at a time. The cants were to be fed into the gang saw via a conveyor belt. However, the gang saw lacked any fail-safe mechanism that would shut down the machine if two or more cants were fed in simultaneously.

18. If more than one cant was fed into the gang saw, it could cause the machine to jam and "kick" the cants out of the machine, violently launching them. Despite this incredibly

dangerous risk, Defendant A&E failed to incorporate into its design and/or electronical control system any safety measure to stop the gang saw if it became jammed with multiple cants.

19.    The installation process went according to plan until March 14, 2023, when Defendant A&E's employees, including Jordan Rowe, were on-site with supervisory authority over Mulch employees to test the automated gang saw and train the Mulch employees, including Mr. Estrada.

20.    One of the cameras/sensors that operates to space cants traveling on the in-feed conveyor belt was improperly selected, designed, installed, or programed by Defendant A&E, causing it to not function/function incorrectly, leading to the cants bumping into each other because the timing was off.

21.    On March 14, 2023, Jordan Rowe from Defendant A&E was in the operator control booth training Mulch employees on the physical controls of the new gang saw and how to operate the gang saw. He was not training them on how to program the system, but how to operate the controls of the gang saw.

22.    Due to at least one camera being improperly selected, designed, installed, or programed by Defendant A&E, Mr. Rowe had to direct Mulch employee Brian Vickers to manually override the system from the operator control booth and to control the stop and start of the conveyor system to keep the boards moving at an even pace.

23.    Mr. Rowe's decision to direct employees to manually override the system, rather than correct the defective camera, sensor, and or program, was not one of specialized knowledge, but instead a reckless and negligent shortcut.

24.    There was no reasonably prudent or safe reason for Defendant A&E agent Jordan Rowe to instruct Brian Vickers to operate the automated system contrary to the system's intended

operation and especially in a manner which specifically required Brian Vickers to direct his full attention to an area away from the direct sight of the gang saw intake. Jordan Rowe clearly undertook supervision and instruction of Mulch employees in the time period leading to and at the time of Carlos Estrada's death.



25.     During this time, Mr. Rowe continued to instruct Mr. Vicker to look at the gang saw controls and also keep looking away from the in-feed, further making it harder for Mr. Vickers to realize that the manual operation override directions that were being given by Mr. Rowe were causing two cants to be fed into the gang saw at one time.

26.     During this time, Defendant A&E, through Mr. Rowe, failed to observe the in-feed or check to ensure that there were not multiple cants attempting to be pushed into the gang saw by his directions to manually override the system.

27.     Defendant A&E continued to oversee and negligently instruct Mulch employees on the operation of the gang saw and instruct them to manually override the system.

28. Defendant A&E recklessly disregarded the safety of employees working the gang saw by manually overriding its controls and instructing employees to keep running the gang saw despite knowing there were issues with the cameras and sensors.

29. Mr. Vickers was unable to see that two pieces of lumber were heading towards the in-feed of the gangsaw at the same time. Defendant A&E had failed to properly design the gang saw, or ensure that it was produced correctly, with an additional camera that could sense when two logs entered the in-feed at the same time that would alert the operator and/or would shut down the gang saw to prevent a jam.

30. Defendant A&E, through Mr. Rowe, had informed Mr. Vickers that their programing, design, and camera sensor system prevented the gang saw from attempting to feed more than one cant into the gang saw at a time.

31. The manual override instructions given by Mr. Rowe, and his instructions to Mr. Vickers to keep moving the conveyor belt, however, in fact resulted in multiple cants being fed into the gang saw at one time.

32. As the gang saw kept trying to take in multiple cants because of Defendant A&E's reckless directions to Mulch employees to override the system, two cants became jammed into the gang saw, causing one to be launched out of the out-feed side of the gang saw.

33. The cant was launched directly at Mr. Estrada, who was struck in the head with such force that it crushed his skull, killing him.

34. The electronic system designed and programed by Defendant A&E had a laser mounted near the in-feed, and that laser could have been programed to stop the machine if more than one cant was being fed into the gang saw at a time. Defendant A&E did not design, manufacture, or program this easily done fail-safe into its operation program.

35. Additional safety cameras and lasers could have been installed on the gang saw that would have easily given the operator a view of the in-feed and/or been programable to stop the gang saw if multiple cants were being jammed into it. Defendant A&E did not design, manufacture, or program these easily done fail-safes into its operation program.

36. Defendant A&E's automation system was defectively designed, manufactured, produced, programed, and/or installed on the subject gang saw, proximately causing Mr. Estrada's death.

37. Defendant A&E further failed to warn consumers and individuals working around the gang saw that its system could result in multiple cants entering the gang saw, resulting in cants being dangerous launched from the gang saw.

38. Defendant A&E falsely advertised and told Mulch and its employees that its automation system prevented multiple cants from dangerously being able to be loaded into the gang saw at one time.

39. Defendant A&E negligently, wantonly, intentionally, and recklessly failed to ensure that its representatives, such as Mr. Rowe, who it assigned to perform gang saw operation training to Mulch employees, were themselves adequately trained on the operation of gang saws and/or the providing of training to end users of its products.

40. Defendant A&E negligently, wantonly, intentionally, and recklessly directed the manual override of the gang saw by Mulch employees, bypassing what safety systems were installed, and creating obviously hazards in complete disregard for Mulch workers around the gang saw.

41. Defendant A&E failed to ensure that the product that it was placing into the stream of commerce was free of unreasonable risk of harm to owners and end users in foreseeable situations, and a product which would not cause severe injury to users and occupants.

42. Defendant A&E knew or should have known customers and end users would rely on its representations that its automation system prevented multiple cants from entering the gang saw at the same time.

43. As a proximate result of Defendant A&E's above-described conduct, Mr. Estrada was horrifically injured, suffering severe pain and anguish, and ultimately wrongfully killed.

## COUNT ONE - STRICT PRODUCTS LIABILITY

44. Plaintiff realleges all paragraphs of the Complaint as if set out here in full.

45. Plaintiff contends that the gang saw automation system and its component parts were designed, manufactured, distributed, marketed, sold or otherwise placed into the stream of commerce by Defendant A&E.

46. Defendant A&E designed and manufactured the gang saw automation system knowing that the cameras and sensors it installed were subject to failure in that they could not properly detect cants being fed into the gang saw.

47. Defendant A&E designed and manufactured the gang saw automation system knowing that it lacked easily installable fail-safes to prevent multiple cants from being fed into the gang saw, resulting in dangerous jams in the gang saw.

48. Defendant A&E knew or should have known that in the event that the automation system failed to prevent more than one cant from entering the gang saw, it could cause the gang saw to become jammed and knew or should have known that jamming of the gang saw could violently launch cants and other material, creating an unreasonable hazard to vehicle occupants.

49. At the time the subject automation system was placed into the stream of commerce there were reasonable and safer alternative designs that existed that would have prevented the loading of more than one cant at a time.

50. Defendant A&E is liable for the injuries and death of Carlos Giovanni Vielman Estrada to the extent the jury finds that the injuries and/or death were proximately caused by the wrongdoing of Defendant A&E.

51. Defendant A&E's conduct constitutes a willful, reckless and wanton disregard for life. Defendant A&E is liable for willful or reckless or wanton disregard of life and safety pursuant to O.C.G.A. § 51-1-11(c).

52. As a proximate consequence of the defects in the automation system and automation components, Mr. Estrada was horrifically injured, suffering severe pain and anguish, and ultimately wrongfully killed. Such conduct warrants the imposition of punitive damages.

### COUNT TWO - NEGLIGENCE, WANTONNESS OR WILLFULNESS OF DEFENDANT A&E

53. Plaintiff realleges all paragraphs of the Complaint as if set out here in full.

54. Defendant A&E, as a product designer, manufacturer, distributer, marketer and seller, owed a duty to the consuming public in general, end users, and the Plaintiff in particular, to exercise reasonable care to design, test, manufacture, inspect, market, integrate into the automation system and its components proper measures and distribute a product which was free of unreasonable risk of harm to owners and end users in foreseeable situations and produce a product which would not cause severe injuries to end users under foreseeable operating conditions.

55. Defendant A&E breached its duty to exercise reasonable care to design, test, manufacture, inspect, market, distribute, integrate into the automation system and its components

proper measures and sell the subject automation system free of an unreasonable risk of physical harm to prospective owners and end users, including the Plaintiff. Defendant A&E breached its duty of due care in a number of ways, including but not limited, to the following:

    a.    Designing and marketing an automation system that was subject to unreasonable risk of improperly detecting and allowing multiple cants to enter the gang saw at one time.

    b.    Designing and marketing a gang saw automation system that was equipped with inadequate cameras and sensors to properly detect cants being fed into the gang saw.

    c.    Designing and marketing a gang saw automation system that was equipped with an inadequate number of cameras and sensors, or installing them in the appropriate locations, to properly detect cants being fed into the gang saw.

    d.    Failing to test the subject automation system for improper detection of cants prior to the sale to determine the likelihood of failure to properly detect multiple cants attempting to be fed into the gang saw.

    e.    Failing to warn the public and end users, and the Plaintiff in particular, of the dangers and defects associated with the design and use of the automation system and in particular failing to warn of the dangers of the system improperly detecting cants.

    f.    Failing to warn the public that the automation system was defective and dangerous to end users working around and on the gang saw.

56.    Before Mr. Estrada's incident on March 14, 2023, Defendant A&E had actual knowledge that the automation system was defective, could misread cants, and that the misread of cants could result in the jamming of the gang saw.

57. Defendant A&E knew of the dangers of the system misreading cants, but despite this knowledge of the danger, Defendant A&E consciously and deliberately kept this information without providing it to the owners and end users of their system.

58. Defendant A&E's conduct was reckless and showed willful or wanton disregard for the safety and well-being of the consuming public and end users, and therefore Defendant A&E's conduct constitutes willful and wanton conduct as defined under O.C.G.A. §51-1-11(c) and §51-12-5.1 in designing, testing, manufacturing, inspecting, marketing, failing to warn and distributing the subject automation system because it had knowledge of the risk of injury and death described in this Complaint. Such conduct warrants the imposition of punitive damages.

59. Defendant A&E knew of the dangers of the automation system failing to properly read cants yet failed to warn the consuming public and end users, including Plaintiff in this case, of the danger.

60. As a proximate consequence of the aforesaid negligent, wanton or willful conduct of Defendant A&E, Mr. Estrada was horrifically injured, suffering severe pain and anguish, and ultimately wrongfully killed. Such conduct warrants the imposition of punitive damages. Plaintiff claims both compensatory and punitive damages.

### COUNT THREE - FAILURE TO WARN BY DEFENDANT A&E

61. Plaintiff realleges all paragraphs of the Complaint as if set out here in full.

62. Defendant A&E had a continuing duty to warn the public of the defects and dangers associated with the design and use of its automation systems.

63. Prior to designing, marketing, distributing, selling, and placing the automation system into the stream of commerce and at all other times pertinent herein to the present day,

Defendant A&E was aware or should have been aware of the dangerous and defective design of this automation system.

64. Defendant A&E was aware or should have been aware of the dangers associated with the subject automation system and that the subject automation system was defective by design and manufacture and that the system could fail to properly read cants during foreseeable usage of the gang saw. Defendant A&E failed to warn its owners and end users and expected consumers of the defects and dangers of the automation system failing to properly read cants. Further, Defendant A&E failed to warn the public that the automation system is defective and dangerous to workers around the gang saw.

65. The conduct of Defendant A&E warrants the imposition of punitive damages.

66. As a proximate consequence of the aforesaid negligent, wanton or willful conduct of Defendant A&E, Mr. Estrada was horrifically injured, suffering severe pain and anguish, and ultimately wrongfully killed. Such conduct warrants the imposition of punitive damages. Plaintiff claims both compensatory and punitive damages.

## COUNT FOUR - NEGLIGENT HIRING, TRAINING, AND SUPERVISION BY DEFENDANT A&E

67. Plaintiff realleges all paragraphs of the Complaint as if set out here in full.

68. Defendant A&E entered into a contract with Mulch, Mr. Vickers and Mr. Estrada's employer, to provide gang saw operation training to Mulch employees on how to manually operate the controls of the new gang saw.

69. Defendant A&E regularly engages in the business of training and providing training services to sawmill operation employees on the proper manner in which to operate gang saws,

15

particularly ones that have been installed with the Defendant A&E automation system, and hold its out to the general public as a provider of these services.

70. Defendant A&E either improperly trained their agents and employees regarding operation of the gang saw, operation of the gang saw automation system, and in general safety practices applicable to gang saw operator that Defendant A&E had contracted to provide to Mulch employees.

71. Defendant A&E failed to properly supervise its employees and representatives, including but not limited to Mr. Rowe, in that it allowed them to manually override the automation system and also provide training to end users on how to operate the gang saw in ways Defendant A&E knew where unsafe and created hazards in the common use of the gang saw.

72. As a proximate consequence of the aforesaid negligent, wanton or willful conduct of Defendant A&E, Mr. Estrada was caused horrifically injured, suffering severe pain and anguish, and ultimately wrongfully killed. Such conduct warrants the imposition of punitive damages. Plaintiff claims both compensatory and punitive damages.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests:

1. A trial by jury
2. That process issue as provided by law;
3. Compensatory damages be awarded in an amount to be shown at trial;
4. Punitive damages be awarded in an amount to be shown at trial;
5. That Plaintiff recover litigation costs and attorney's fees;
6. That judgment be entered in favor of Plaintiff and against the Defendant; and
7. Such other relief as this Court deems proper.

**PLAINTIFF DEMAND A JURY TRIAL ON ALL ISSUES.**

                              HILLARY B. CRANFORD, Individually
                              and as Administratrix of the
                              Estate of CARLOS GIOVANNI VIELMAN ESTRADA,
                              By Counsel,

*/s/ Timothy C. Bailey*
Timothy C. Bailey (GASB#568817)
Bailey Javins & Carter, LC
350 Riverwood Pkwy., SE, Ste. GL-25
Atlanta, GA 30339
678-210-3292
tbailey@bjc4u.com
*Counsel for Plaintiffs*

17